IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA T., | ) |
|       Plaintiff, | ) |
| v. | ) No. 22 C 1323 |
| MARTIN J. O'MALLEY, Commissioner of Social Security,[1] | ) Magistrate Judge Finnegan |
|       Defendant. | ) |

## ORDER

Plaintiff Donna T. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After careful review of the record and the parties' respective arguments, the Court now grants the Commissioner's motion.

## BACKGROUND

Plaintiff protectively applied for DIB and SSI on July 16, 2020, alleging disability since January 26, 2019 due to Darrach procedure to the left wrist, scapholunate ligament repair to the left wrist, asthma, hypertension/high blood pressure, sciatica of the lower back, and mallett (trigger) finger of the right middle digit. (R. 132-38, 213). Plaintiff

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

subsequently amended the alleged onset date to October 1, 2020 due to disqualifying substantial gainful activity. (R. 15, 35).

Born in June 1973, Plaintiff was 47 years old as of the alleged disability onset date (R. 259), making her a younger person. 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c). She completed two years of college and lives in a home with her two children and three grandchildren. (R. 42-43, 214). Plaintiff worked in the health care industry for many years, holding positions as a certified nursing assistant and mental health worker. (R. 214). In January 2019, she was involved in an automobile collision and injured her left wrist. (R. 308). This led to several surgeries but she continued to work full-time until October 1, 2020. (R. 214). As of August 2021, Plaintiff was still working part-time as a companion for an 85-year-old woman and as a personal assistant with the Department of Rehabilitative Services. (R. 44, 214). None of the part-time work has qualified as substantial gainful activity. (R. 15-16).

The Social Security Administration denied Plaintiff's applications initially on December 29, 2020, and again upon reconsideration on March 15, 2021. (R. 66-123, 126-38). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Carla Suffi (the "ALJ") on August 11, 2021.[2] (R. 27). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Julie Bose (the "VE"). (R. 29-65). On September 28, 2021, the ALJ found that Plaintiff's obesity, hypertension, right third trigger finger, history of mallet finger status-post surgery, and left wrist ligament injury status-post surgery are severe impairments, but that they do not

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

alone or in combination meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16).

After reviewing the evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a reduced range of light work. (R. 16-20). The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could perform Plaintiff's past work as a home health care aide, along with a significant number of other jobs available in the national economy, including furniture rental clerk, account investigator, and office helper. (R. 20-21). As a result, the ALJ concluded that Plaintiff was not disabled at any time from the alleged disability onset date through the date of the decision. (R. 21-22). The Appeals Council denied Plaintiff's request for review on January 7, 2022. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) failed to consider significant medical evidence of record in determining her RFC; (2) erred in evaluating her subjective statements regarding her symptoms; and (3) ignored VE testimony regarding jobs available to a person with the use of only one hand. For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

3

## **DISCUSSION**

### A. Standard of Review

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[3] 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation

---

[3] Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion."); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**B.     Analysis**

    **1.     RFC**

Plaintiff argues that the case must be reversed or remanded because the ALJ failed to consider significant evidence in determining her RFC. A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Anna-Marie L. v. Kijakazi*, No. 21 C 50354, 2022 WL 4610120, at *2 (N.D. Ill. Sept. 30, 2022) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ found Plaintiff capable of light work with certain restrictions. Though Plaintiff can use her dominant right arm without limitation, she can only use the non-dominant left arm as follows: no gripping or lifting more than one pound; occasional gross handling; frequent fine fingering/manipulation; and no pushing or pulling. Plaintiff is also limited to: frequent stooping, kneeling, and crouching; occasional climbing of ramps and stairs; no crawling; and no climbing of ladders, ropes, or scaffolds. Finally, she can never perform work tasks involving exposure to concentrated amounts of wetness or vibration,

or exposure to "extraordinary hazards such as unprotected heights and dangerous, unguarded, moving mechanical parts that can engage the body." (R. 16).

In support of this RFC, the ALJ set forth a detailed recitation of Plaintiff's medical history. Following her January 2019 auto accident, Plaintiff complained of left wrist pain and pain in the right middle finger. (R. 17, 18). Between March and December 2019, Plaintiff underwent three surgical procedures: (1) a closed reduction and internal fixation of the right middle finger on March 25, 2019 (R. 17, 18, 379-80, 382-83); (2) a partial denervation of the left hand and Darrach procedure of the left wrist on May 31, 2019 (R. 18, 397-99); and (3) a flexor carpal ulnaris tendon transfer, extension carpi ulnaris tendon transfer, and internal fixation with K-wires of the scapholunate on December 16, 2019. (R. 18, 426). By January 21, 2020, Plaintiff was "doing great" with no complaints of pain and very good range of motion in the wrist. (R. 18, 436-37).

A few months later, on June 23, 2020, Plaintiff complained of left wrist pain again, along with an inability to wash herself or to reach under her opposite arm. On exam, however, treating surgeon Orhan Kaymakcalan, M.D., noted that Plaintiff brought her hand to her head and neck with no difficulty and had full range of motion on the left. (R. 19, 442). Dr. Kaymakcalan documented an ability to lift one pound with each finger on the left hand and recommended gentle occupational therapy ("OT") with no heavy lifting or pushing. He did not recommend additional surgery but invited Plaintiff to get a second opinion. (*Id.*). On July 6, 2020, M. Vincent Makhlouf, M.D., agreed that surgical intervention was not appropriate. Plaintiff exhibited tenderness mainly on palpation of the scar on the wrist and had a positive scaphoid test that was not very acute in nature. (R. 19, 444). Dr. Makhlouf suspected that a scapholunate tear not apparent on x-ray was

6

causing pain on the ulnar side of the wrist and recommended that Plaintiff resume OT. (*Id.*).

When Plaintiff saw Dr. Kaymakcalan on August 4, 2020, she was doing well with no acute pain, resting pain, or pain with normal activities of daily living. She did complain of discomfort on strenuous activities during the examination but was able to bring her hand to her head and back of head. Dr. Kaymakcalan observed no swelling and only "slight minimal tenderness over the scar." (R. 19, 446). He gave Plaintiff Salonpas, Neurontin and Motrin and said she could not do "regular heavy work." (*Id.*). Plaintiff was subsequently discharged from OT on September 16, 2020. At that time, she had met all of her short-term goals, including being able to increase left grip strength by 5-10 pounds (to a total of 21 pounds) for opening containers independently. (R. 19, 599, 600). She had also met several of her long-term goals and made improvements in pain level, range of motion, and strength, with an increased ability to complete activities of daily living. (R. 19, 600-01).

Plaintiff does not explain how any of this medical evidence supports greater functional restrictions or demonstrates that she was disabled as of the October 1, 2020 alleged onset date. Notably, the opinions of record support the opposite conclusion. On December 11, 2020, state agency reviewer Sai Nimmagadda, M.D., determined that Plaintiff has an RFC for light work with: occasional lifting and carrying of 20 pounds; frequent lifting and carrying of 10 pounds; occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; unlimited balancing, stooping, kneeling, crouching, and crawling; and no concentrated exposure to wetness, vibration, or hazards. (R. 74-77, 88-91). Reynaldo Gotanco, M.D., affirmed these findings on March 10, 2021.

7

(R. 102-06, 115-19). The ALJ found both opinions "largely persuasive," as they were consistent with the evidence as a whole. (R. 19-20). The ALJ also credited Dr. Kaymakcalan's assessment that Plaintiff cannot perform heavy work and accounted for that limitation in the RFC. (R. 19). Plaintiff does not address these opinions or challenge the weight assigned to them. *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020) (arguments not raised before the district court are waived). She also fails to identify any physician of record who found her more limited than the ALJ. As the Seventh Circuit has stated, "[t]he lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal." *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023).

Also unavailing is Plaintiff's cursory objection that the ALJ erred in "discounting [her] allegations of severe left wrist pain caused by medically determinable impairment." (Doc. 12, at 14). To begin, there is no merit to Plaintiff's assertion that the ALJ's use of boilerplate credibility language requires remand. (*Id.* at 13). This is because the ALJ provided several valid reasons for discounting Plaintiff's testimony, none of which was "patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) ("As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong."). For example, the ALJ noted that Plaintiff continued to work part-time, even as of the August 11, 2021 hearing. (R. 17, 43-44); *Dorothy B. v. Berryhill*, No. 18 C 50017, 2019 WL 2325998, at *4 (N.D. Ill. May 31, 2019) (citing *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)) ("The ALJ is entitled to consider Plaintiff's part-time work after her alleged onset date.").

8

The ALJ also observed that Plaintiff's statements were inconsistent with objective evidence. (R. 19). For instance, Plaintiff complained to Dr. Kaymakcalan in June 2020 that she could not reach under her opposite arm, but on exam, she brought her hand to her head and neck with no difficulty and had full range of motion on the left. (R. 19, 446); *See Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration."). Plaintiff does not mention these aspects of the ALJ's credibility determination and has waived any related challenges. *Jeske*, 955 F.3d at 597.

Moreover, in formulating the RFC, the ALJ imposed additional restrictions beyond those articulated by the state agency reviewers to account for Plaintiff's testimony regarding her limitations (e.g., no gripping or lifting more than one pound; occasional gross handling; frequent fine fingering/manipulation; no pushing or pulling; frequent stooping, kneeling, and crouching; and no crawling). (R. 19-20). In other words, "[i]t was because of and not in spite of [Plaintiff's] testimony that the ALJ limited her to a more restrictive residual functional capacity finding than any physician on the record." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. Aug. 13, 2010). Nothing about this assessment constitutes reversible error.

Plaintiff insists that remand is still required because the ALJ did not address records showing that on May 24 and June 21, 2021, she returned to Dr. Makhlouf with continuing left hand scapholunate ligament pain. (R. 562-63). Dr. Makhlouf documented reduced range of motion of 25/55 and significant discomfort on palpation of the left wrist. He was unable to "pinpoint the source" of Plaintiff's pain but stated that since a lidocaine

9

injection did not help, additional surgery was required. (*Id.*). Plaintiff says she had a proximal row carpectomy approximately one month after the August 11, 2021 hearing and argues that this supports her claims of disabling pain and limitation. (Doc. 12, at 14).

Even assuming the ALJ erred in failing to mention these additional records from Dr. Makhlouf, any such error was harmless. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)) ("We have repeatedly emphasized that 'the harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.'"). The ALJ was well aware of Plaintiff's ongoing left wrist problems and heard testimony about another planned surgical procedure. (R. 41-42). The ALJ also asked Plaintiff's counsel about additional medical documents and held the record open for their submission. (R. 13, 31-32, 64). Despite this, Plaintiff did not provide a functional capacity assessment from any of her physicians, including Dr. Makhlouf, much less one indicating that she has greater restrictions than those identified by the ALJ. *Tutwiler*, 87 F.4th at 860; *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) ("[B]ecause Summers was represented by counsel at the hearing, she is presumed to have made her best case before the ALJ."). Plaintiff's mere speculation that she "perhaps" cannot use her left arm at all anymore after the September 2021 surgery (Doc. 15, at 4-5), is insufficient to justify a remand, particularly absent corroborating medical evidence. *Stewart v. Berryhill*, 731 F. Appx. 509, 510 (7th Cir. 2018) ("Unsubstantiated claims are of course, no substitute for evidence.") (internal quotations omitted).

10

Viewing the record as a whole, the ALJ reasonably considered the medical opinions, treatment history, and testimonial evidence in determining Plaintiff's RFC. Plaintiff may believe that her condition has worsened since the ALJ issued her decision on September 28, 2021, but her recourse is to file a new application for benefits and provide appropriate medical support. *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008). On the record presented, the ALJ's decision is supported by substantial evidence. *Robert S. v. Kijakazi*, No. 20 C 6286, 2022 WL 45036, at *4 (N.D. Ill. Jan. 5, 2022) ("The substantial evidence standard is a low hurdle to negotiate.").

### 2. VE Testimony

Plaintiff next argues that the ALJ improperly ignored important testimony from the VE. During the August 11, 2021 hearing, the ALJ asked the VE a question about jobs available to a hypothetical person who could perform one-handed tasks using the dominant right upper extremity, but could not use the non-dominant arm as an assist. (R. 61). The VE testified that such a person would not be capable of any sedentary or light jobs. (*Id.*). Plaintiff insists that she cannot use her left arm as an assist under her right arm and so the ALJ should have found her disabled. (Doc. 12, at 14-15; Doc. 15, at 4).

This argument is unpersuasive because there is no medical evidence indicating that Plaintiff is incapable of using her left arm as an assist. It is well-established that "only limitations supported by the medical record must be incorporated into the hypothetical posed to the VE and the ALJ's RFC assessment." *Eric W. v. Kijakazi*, No. 22 C 3894, 2023 WL 8281480, at *4 n.4 (N.D. Ill. Nov. 30, 2023) (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). In addition, it "is not reversible error where the hypothetical question posed to the VE was more restrictive than the limitations the ALJ ultimately assigned to

11

the claimant." *Kathleen C. v. Saul*, No. 19 C 1564, 2020 WL 2219047, at *6 (N.D. Ill. May 7, 2020) (internal quotations omitted). Here, no physician of record suggested that Plaintiff cannot use her left arm as an assist and the medical record amply supports the restrictions set forth in the RFC. The ALJ was not required to accept Plaintiff's contrary testimony.

In her reply brief, Plaintiff takes issue with the VE's testimony that a person with her RFC for light work could perform her past relevant work as a home health care aide/personal assistant, noting that those jobs are considered medium according to the Dictionary of Occupational Titles. (Doc. 15, at 4). As a preliminary matter, "arguments raised for the first time in a reply brief are deemed waived." *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012). Moreover, the VE testified, and the ALJ found that Plaintiff could handle her past work as she actually performed it at the light and sedentary levels. (R. 20, 58-59). This was entirely proper. *Peterson v. Saul*, No. 19 C 3086, 2020 WL 3949237, at *3 (C.D. Ill. June 25, 2020) (citing 20 C.F.R. § 404.1560(b)(2)) ("Generally, Step 4 provides that a person is not disabled if she can perform the job as the job is generally performed in the national economy or as she actually performed it."). And the ALJ went on to identify three additional jobs that the VE testified Plaintiff could perform, including furniture retail clerk, account investigator, and office helper, which all fall within the light exertional level. (R. 21, 60-61). Plaintiff does not raise any specific objection as to these positions. *Jeske*, 955 F.3d at 597.

Viewing the record as a whole, the ALJ did not err in relying on the VE's testimony at Steps 4 and 5 of the sequential analysis. Plaintiff's request to remand the case for further consideration of this issue is denied.

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion for summary judgment [11, 12] is denied, and the Commissioner's cross-motion for summary judgment is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: September 26, 2024

_____
SHEILA FINNEGAN
United States Magistrate Judge